UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
SUSAN R. CASTINE; CLINTON COUNTY
DEMOCRATIC PARTY; & MARTIN MANNIX,
as Chairman of the Clinton County
Democratic Party,

     Plaintiffs,

   v.           No. 8:10-CV-879

MICHAEL E. ZURLO, in his individual and
official capacity & CLINTON COUNTY,

     Defendants
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
APPEARANCES:         OF COUNSEL:

LAW OFFICE OF THOMAS MARCELLE  THOMAS MARCELLE, ESQ.
Attorneys for Plaintiffs
2 E-Comm Square, 3rd Floor
Albany, New York 12207

TOWNE, RYAN & PARTNERS, P.C.   CLAUDIA A. RYAN, ESQ.
Attorneys for Defendants       JOHN F. MOORE, ESQ.
450 New Karner Road
P.O. Box 15072
Albany, New York 12205

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION & ORDER

### I. INTRODUCTION

Plaintiffs Susan R. Castine, Clinton County Democratic Party, and Martin Mannix ("plaintiffs") move for a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 enjoining defendants Clinton County Administrator Michael E. Zurlo and Clinton County ("defendants") from enforcing Clinton County Local Law No. 1 of year 2000

("Local Law No. 1"). Defendants oppose plaintiffs's motion. Oral argument was held on July 27, 2010, in Utica, New York. Decision was reserved.

## II. BACKGROUND

In 2006, plaintiff Castine was elected to a four-year term as Town Justice for Beekmantown, New York, within defendant Clinton County, beginning on January 1, 2007 and ending December 31, 2010. On September 16, 2008, plaintiff Clinton County Democratic Party nominated her for Election Commissioner of the Clinton County Board of Elections. The Clinton County Legislature appointed her as Election Commissioner on October 22, 2008 for a two-year term beginning on January 1, 2009 and ending on December 31, 2010.

On July 12, 2010, plaintiff Castine filed her Democratic candidacy petition for re-election as Beekmantown Town Justice. Her bid for re-election is presently challenged by Terry Sears, the nephew of Republican Clinton County Legislator E. Thomas Sears. The primary elections are scheduled for September 14, 2010. On July 15, 2010, defendant Zurlo sent plaintiff Castine a letter informing her that she would be terminated from her position as Election Commissioner of the Board of Elections effective July 16, 2010, due to her candidacy for Town Justice and pursuant to Local Law No. 1. See Ex. A to Pls.' Compl., Dkt. No. 1. Local Law No. 1 states, in pertinent part:

> Any person who shall become a candidate for elective public office shall be disqualified during the period of his or her candidacy from appointment or continued employment from the Board of Elections. The period of his or her candidacy shall be deemed to commence with the filing with the Board of Elections of a nominating or designating petition in furtherance of his or her candidacy unless he or she shall promptly file with the Board a written declination of candidacy.

Ex. B. to Pls.' Compl., Dkt. No. 1.

On July 16, 2010, plaintiff Castine sent defendant Zurlo a letter indicating her intention to continue her employment as Election Commissioner notwithstanding her candidacy for re-election as Beekmantown Town Justice.  See Ex. C to Pls.' Compl., Dkt. No. 1.  In her letter, plaintiff Castine explained that she believed Local Law No. 1 was in violation of and inconsistent with New York State Election Law § 3-200(4), which provides:

> No person shall be appointed as election commissioner or continue to hold office who is not a registered voter in the county and not an enrolled member of the party recommending his appointment, or who holds any other public office, except that of commissioner of deeds, notary public, village officer, city or town justice, member of a community board within the City of New York or trustee or officer of a school district outside of a city.

N.Y. ELEC. LAW § 3-200(4).

Following plaintiff Castine's refusal to vacate her position as Election Commissioner, defendant Zurlo ordered the Clinton County Sheriff to escort her from her office on July 19, 2010.  Plaintiff Castine was escorted that afternoon, and plaintiffs filed their complaint in federal court the same day in which they allege, *inter alia*, the deprivation of their First Amendment rights due to defendants' enforcement of Local Law No. 1.  An order to show cause and temporary restraining order was issued on July 20, 2010, enjoining defendants from enforcing Local Law No. 1 and otherwise preventing plaintiff Castine from performing her duties as Election Commissioner.  See Order to Show Cause and TRO, Dkt. No. 5.  As directed by the order, the parties appeared in Utica, New York on July 29, 2010 for oral argument as to plaintiff's motion for a preliminary injunction.  Decision was reserved, and the temporary restraining order was

extended an additional fourteen days in accordance with Federal Rule of Civil Procedure 65(b)(2). The parties were informed that a written decision would be issued beforehand, at which time the temporary restraining order would be lifted. See Text Minute Entry, Dkt. No. 11.

## III. DISCUSSION

Generally, a preliminary injunction will be issued if the party requesting relief can show "'(1) irreparable harm and (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party.'" City of N.Y. v. Golden Feather Smoke Shop, Inc., 597 F.3d 115, 120 (2d Cir. 2010) (quoting Lynch v. City of N.Y., 589 F.3d 94, 98 (2d Cir. 2009)). Although, under this standard, a likelihood of success on the merits is not always required, a moving party "cannot rely on the 'fair ground for litigation' alternative in challenging 'governmental action taken in the public interest pursuant to a statutory or regulatory scheme.'" Monserrate v. N.Y. State Senate, 599 F.3d 148, 154 (2d Cir. 2010) (quoting Plaza Health Labs., Inc. v. Perales, 878 F.2d 577, 580 (2d Cir. 1989)). Where the government acts pursuant to a statutory scheme that was the product of "reasoned democratic processes," the higher "likelihood of success on the merits" standard will apply. See Bronx Household of Faith v. Bd. of Educ. of City of N.Y., 331 F.3d 342, 349 (2d Cir. 2003) (citing Forest City Daly Hous., Inc. v. Town of N. Hempstead, 175 F.3d 144, 149 (2d Cir. 1999)); see also Able v. United States, 44 F.3d 128, 131-32 (2d Cir. 1995) (per curiam) ("We believe that in a case such as this, where the full play of the democratic process involving both the legislative and executive branches has produced a policy in the name of the public

interest embodied in a statute and implementing regulations, our role in reviewing that determination for the purpose of deciding whether to apply the 'serious questions' or likelihood of success' standard is severely limited.").

### A. Irreparable Harm

Irreparable harm is "certain and imminent harm for which a monetary award does not adequately compensate." Wisdom Import Sales Co., L.L.C. v. Labatt Brewing, Co., Ltd., 339 F.3d 101, 113 (citing JaYaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995)). Plaintiffs contend they will suffer two separate types of irreparable harm: first, they argue that a monetary award cannot adequately compensate them for the loss of their First Amendment right of association, and second, they assert that the enforcement of Local Law No. 1 will result in undue confusion and uncertainty surrounding the upcoming Clinton County elections.

The parties appropriately cite conflicting Second Circuit precedent for and against the proposition that First Amendment rights violations are necessarily irreparable. Compare Tunick v. Safir, 209 F.3d 67, 70 (2d Cir. 2000) with Latino Officers Ass'n v. Safir, 170 F.3d 167, 171 (2d Cir. 1999).  However, "[w]hatever tension may be said to exist in our case law regarding whether irreparable harm may be presumed with respect to complaints alleging First Amendment violations, [it] is more apparent than real." Bronx Household, 331 F.3d at 349.  The Bronx Household court drew a distinction between governmental action that directly limits speech and action that merely bears the potential to affect speech.  Id. at 349-50.  Accordingly, defendants concede that irreparable harm is presumed in cases alleging direct limitations upon First Amendment rights as a result of government conduct, see Defs.' Mem. of Law in Opp'n to Pls.' Mot. for an Order to Show

Cause, Dkt. No. 10, 4, but they argue that the enforcement of Local Law No. 1 does not directly limit plaintiffs' rights.[1]

### 1. Plaintiff Susan R. Castine

With respect to plaintiff Castine's right to run for re-election, Local Law No. 1 does not directly bar her candidacy for Beekmantown Town Justice. Rather, Local Law No. 1 only disqualifies her from holding the position of Election Commissioner during her candidacy for public office. Accordingly, she is not irreparably harmed because she may exercise her First Amendment right to run for Town Justice regardless of whether the county statute is enforced. Moreover, she may resume her role as Election Commissioner in the event she wins re-election because she would no longer be a candidate for public office. Although plaintiff Castine may very well have a viable claim based upon her removal as Election Commissioner, she has not demonstrated that she could not be adequately compensated for her injury with a monetary award. See Savage v. Gorski, 850 F.2d 64, 67 (2d Cir. 1988) (holding that the plaintiffs did not suffer irreparable harm for loss of their jobs because reinstatement and money damages could make them whole). Accordingly, she has not satisfied the first prong of the preliminary injunction standard, and any analysis of her claims relative to the second prong is unnecessary.

---

[1] Although Bronx Household discussed the distinction between direct and potential violations of a plaintiff's First Amendment right to *free speech*, defendants do not argue that the holding should apply with less force here simply because plaintiffs assert violations of their First Amendment right to *association*. See Elrod v. Burns, 427 U.S. 347, 373-74, 96 S. Ct. 2673, 2689-90 (1976) (upholding preliminary injunction against violation of moving party's First Amendment rights of association).

**2. Plaintiffs Clinton County Democratic Party and Martin Mannix**

The enforcement of Local Law No. 1 harms plaintiffs Clinton County Democratic Party and Mannix in a different manner. Rather than disqualify them from employment with the Board of Elections, Local Law No. 1 directly limits their First Amendment right to association with their Election Commissioner. Defendants acknowledge that plaintiffs have a First Amendment right to identify the individuals with whom they associate with. See Defs.' Mem. of Law in Opp'n to Pls.' Mot. for an Order to Show Cause, Dkt. No. 10, 5. Nevertheless, defendants correctly argue that this right is not so far reaching as to provide plaintiffs with an absolute right to choose the Democratic Election Commissioner. See Eisberg v. Dutchess Cnty. Legislature, 37 F. Supp. 2d 283, 288 (S.D.N.Y. 1999). In Eisberg, the court considered whether a county legislature violated the plaintiffs' First Amendment rights by failing to appoint the local Democratic Party's nominee for Election Commissioner, and if so, whether a preliminary injunction was warranted enjoining the county legislature from disregarding the plaintiffs' recommendation. Id. at 284. As the Eisberg court noted, N.Y. Election Law § 3-204 authorizes county political parties to only make recommendations for Election Commissioner vacancies, whereas county legislatures control whether a recommended candidate is appointed. See N.Y. ELEC. LAW § 3-204(4). Accordingly, a plaintiff's First Amendment association rights are "not impinged by denying them the right to appoint an Election Commissioner, since they never [have] such a right in the first instance." Eisberg, 37 F. Supp. 2d at 288.

Notwithstanding the delegation of authority under § 3-204, plaintiffs Clinton County Democratic Party and Mannix will be deprived of more than their preferred choice for Election Commissioner. In light of the thirty-day time period afforded to the Clinton

County Legislature to consider the appointment or rejection of a party's recommendation for Election Commissioner, see N.Y. ELEC. LAW § 3-204(4), plaintiffs will likely be denied their right to associate with an Election Commissioner of their choosing until nearly the eve of the primary elections scheduled for September 14, 2010.  Enforcement of Local Law No. 1 will therefore deprive the Clinton County Democratic Party of its bi-partisan representation on the Board of Elections during the start of the election season.  Unlike the harm suffered by plaintiff Castine resulting from the loss of her employment, a monetary award cannot adequately compensate plaintiff Clinton County Democratic Party for any injury that may flow from its lack of representation on the Board of Elections during a critical time period in the political calendar.  Additionally, given the political tensions within Clinton County as illustrated by the present litigation, there is little guarantee that the Democratic Party's recommendation will be appointed quickly, let alone appointed at all.  If the thirty-day period established under § 3-204(4) expires without there being an appointment, plaintiff Clinton County Democratic Party's eventual appointee[2] will be forced to assume the responsibilities of Election Commissioner in the middle of the electoral process; meanwhile, his or her Republican counterpart will have had the benefit of acting as Election Commissioner from the beginning of the year.  For all of these reasons, enforcement of Local Law No. 1 will subject plaintiffs Clinton County Democratic Party and Mannix to a real, unquantifiable harm stemming from their lack of representation on the Board of Elections during a time that is too near various electoral

---

[2] Pursuant to § 3-204(4), if the county legislature fails to appoint a political party's recommendation for Election Commissioner within thirty days after the filing of the certificate of recommendation, the county's legislators who are members of the political party making the recommendation may make the appointment themselves.

events, including the primary elections on September 14, 2010. Therefore, they have satisfied the first prong of the preliminary injunction standard.

### B. Likelihood of Success, or Alternatively, Fair Ground for Litigation

As a preliminary matter, the parties dispute whether to apply the "likelihood of success" standard, or alternatively, the less stringent "fair ground for litigation" standard. A party seeking a preliminary injunction will be required to show a likelihood of success on the merits where it seeks to prevent "'governmental action taken in the public interest pursuant to a statutory or regulatory scheme.'" Monserrate, 599 F.3d at 154 (quoting Plaza Health Labs., Inc., 878 F.2d at 580). In particular, judicial deference is owed to "legislation or regulations developed through presumptively reasoned democratic processes." Forest City Daly Housing, Inc., 175 F.3d at 149 (quoting Able, 44 F.3d at 131).

Although Local Law No. 1 was presumably the product of democratic processes within defendant Clinton County, there is no reason to conclude that N.Y. ELEC. LAW § 3-200 was born from different methods. Pursuant to § 3-200(4), the New York Legislature carved out several exceptions from the general rule against simultaneous public service as an Election Commissioner and an elected official. Logically, New York's election law bars an Election Commissioner from being a candidate for only those elected offices she would not be entitled to hold while serving on the Board of Elections. See id. § 3-200(6). A plain reading of §§ 3-200(4) and (6) indicates the State's intention to permit plaintiff Castine to run for Town Justice while concurrently serving as Clinton County's Election Commissioner. Judicial deference is owed to both the county and state laws at issue, and in light of the apparent conflict of laws, the less stringent "fair ground for litigation"

standard is appropriate because defendants' conduct is both pursuant and in violation of two statutory schemes that were the result of democratic processes.

Plaintiffs Clinton County Democratic Party and Mannix easily meet this less demanding standard. Defendants argue they would have removed plaintiff Castine from her position as Election Commissioner in the absence of her protected activity because they have a legitimate governmental interest in the enforcement of Local Law No. 1. See Defs.' Mem. of Law in Opp'n to Pls.' Mot. for an Order to Show Cause, Dkt. No. 10, 9. Although a local law barring Election Commissioners from presiding over elections in which they are running for public office may be a sound measure of public policy, defendants cannot have a legitimate governmental interest in enforcing a statutory scheme that is violative of the New York State Constitution. See N.Y. CONST. art. IX, § 2(c) ("[E]very local government shall have power to adopt and amend local laws not inconsistent with the provisions of this constitution or any general law relating to its property, affairs or government . . . ."); Consolidated Edison Co. of N.Y., Inc. v. Town of Red Hook, 60 N.Y.2d 99, 107 (1983).

Defendants rely entirely upon N.Y. Election Law § 1-102. That section, entitled "Applicability of chapter," provides:

> This chapter shall govern the conduct of all elections at which voters of the state of New York may cast a ballot for the purpose of electing an individual to any party position or nominating or electing an individual to any federal, state, county, city, town or village office, or deciding any ballot question submitted to all the voters of the state or the voters of any county or city, or deciding any ballot question submitted to the voters of any town or village at the time of a general election. Where a specific provision of law exists in any other law which is inconsistent with the provisions of this chapter, such provision shall apply unless a provision of this chapter specifies that such provision of this chapter shall apply notwithstanding any other provision of law.

N.Y. ELEC. LAW § 1-102.  Defendants contend Local Law No. 1 supersedes § 3-200 because the state statute does not expressly state that it "shall apply notwithstanding any other provision of law."

Defendants' argument deserves consideration.  Nothing in § 1-102 indicates that the New York Legislature was only speaking in reference to conflicting *state* laws.  Rather, the statute reads: "Where a specific provision of law exists in *any other law* which is inconsistent with the provisions of this chapter . . . ."  N.Y. ELEC. LAW § 1-102 (emphasis added).  Therefore, under the statute's plain meaning, Local Law No. 1 would override § 3-200 due to the lack of an explicit statement to the contrary.

On the other hand, under this interpretation of §1-102, much of New York's Election Law could be rendered a nullity at the discretion of county legislatures.  Both parties struggled to cite many examples of when the State's Election Law expressly overrides other provisions of law.  Further, "[a] local law may be ruled invalid as inconsistent with State law not only where an express conflict exists between the State and local laws, but also where the State has clearly evinced a desire to preempt an entire field thereby precluding any further local regulation."  Jancyn Mfg. Corp. v. Suffolk Cnty., 71 N.Y.2d 91, 96-97 (1987) (citations omitted).  A local law will be considered inconsistent with the State Legislature's overriding interests if it either prohibits conduct which is otherwise permitted or adds restrictions to rights provided under state law.  Id. at 97 (citations omitted).  Here, it is relatively undisputed that Local Law No. 1 prohibits an act that is otherwise permitted by § 3-200(6), i.e., being a candidate for Town Justice while serving as an Election Commissioner.

On at least one occasion, New York State courts have held that the State Legislature reserved for itself the authority to define the circumstances under which an Election Commissioner may be disqualified from office.  See Wood v. Cortland, 23 Misc. 3d 913, 917, 874 N.Y.S.2d 359, 364 (N.Y. Sup. Ct. 2009), aff'd, 72 A.D.3d 1447 (N.Y. App. Div. 3d Dep't 2010).  In Wood, the court invalidated a county law disqualifying the petitioner from continuing his service as Election Commissioner because the county law conflicted with New York's Public Officers Law § 30.  23 Misc. 3d at 917, 874 N.Y.S.2d at 363-64.  By describing the limited circumstances under which a person could be disqualified as Election Commissioner in Public Officers Law § 30, the State Legislature was deemed to have withheld this authority from county governments.  Id.[3]  Significantly, the Appellate Division, Third Department has jurisdiction over appeals from judgments or orders of the courts within defendant Clinton County.  Upon appeal from the State Supreme Court's decision in Wood, the Third Department explained: "In a well-reasoned decision, Supreme Court granted petitioner's application to the extent that he sought annulment of his removal from office . . . ."  Defendants Zulo and Clinton County were afforded the opportunity to address the holding in Wood in their response to plaintiffs' memorandum of law, but their motion papers are devoid of any discussion for why the same rationale should not apply here.

---

[3] As would likely be the case with plaintiff Castine, the petitioner in Wood could not be restored to his position because his term limit had expired by the time the court reached its decision.  Id. at 917, 874 N.Y.S.2d at 364.  Nevertheless, a monetary award adequately compensated him for being unduly removed from his office.  Id.  As already discussed, it is the irreparable harm suffered by plaintiffs Clinton County Democratic Party and Mannix, as opposed to plaintiff Castine, that satisfies the first prong for issuing a preliminary injunction in this case.  Notably, the Cortland County Democratic Party was not a plaintiff in Wood, and accordingly, any harm it may have suffered was not considered for purposes of issuing a preliminary injunction.

In light of the holding in Wood and the likelihood that the State Legislature did not intend for county legislatures to be able to supersede much of the New York Election Law, there are, at a minimum, sufficiently serious questions going to the merits of plaintiffs' claims to make them fair ground for litigation. The second component of the "fair ground for litigation standard"–whether a balance of the hardships tips decidedly in favor of the moving party–favors granting the preliminary injunction because plaintiffs Clinton County Democratic Party and Mannix will bear a greater injury from the removal of their Election Commissioner than will defendants should plaintiff Castine be permitted to remain in her position during her candidacy for Town Justice. As discussed in consideration of the irreparable harm prong, plaintiffs will likely be deprived of their representation on the Board of Elections for at least thirty-days and during a critical time period in the election calendar should they be denied preliminary injunctive relief. In contrast, any alleged harm flowing from plaintiff Castine's simultaneous role as Election Commissioner and candidate for Town Justice may be safeguarded against by the Clinton County Republican Party's appointed Election Commissioner. When given a choice between a Board of Elections with only one political party's Election Commissioner or, alternatively, both parties' Election Commissioners, the balance of the hardships tips decidedly in favor of the party whom bears the risk of having no representation. Therefore, plaintiffs Clinton County Democratic Party and Mannix have satisfied the second prong of the preliminary injunction standard, and their motion will be granted.

## IV. CONCLUSION

Plaintiff Castine is not entitled to a preliminary injunction because she will not suffer irreparable harm. To the extent that she states a First Amendment claim for retaliation based upon her disqualification as Election Commissioner, an award of monetary damages may adequately compensate her for her injuries. In contrast, plaintiffs Clinton County Democratic Party and Mannix are entitled to a preliminary injunction because they will suffer irreparable harm, they have raised sufficiently serious questions going to the merits of their claims, and the balance of hardships tips in their favor. The less exacting standard under the second prong for seeking a preliminary injunction is appropriate where, as is the case here, the defendants act pursuant to a local statutory scheme but contrary to the intention of the State Legislature. The Wood holding and the direct conflict of laws, at a minimum, raise serious questions as to the validity of Local Law No. 1 and justify a preliminary injunction. Finally, since there is no possibility of a monetary loss to the defendants, a bond or other form of security pursuant to Federal Rule of Civil Procedure 65(c) is not required.

Accordingly,

it is ORDERED that

(1) The temporary restraining order entered on July 20, 2010 and extended until August 12, 2010 is VACATED;

(2) Plaintiff Susan R. Castine's motion for a preliminary injunction is DENIED;

(3) Plaintiffs Clinton County Democratic Party's and Martin Mannix's motion for a preliminary injunction is GRANTED; and

(4) Defendants Michael E. Zurlo and Clinton County are PRELIMINARILY ENJOINED from the following conduct until further order:

 (a) The enforcement of Clinton County Local Law No. 1; and

 (b) All action or threat of action that prevents or inhibits plaintiff Susan R. Castine from performing her duties as the Election Commissioner of the Clinton County Board of Elections.

_____
United States District Judge

Dated: August 11, 2010
   Utica, New York