UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SUSAN R. CASTINE,

                 Plaintiff,

          v.                        No. 8:10-CV-879

MICHAEL E. ZURLO, in his individual and
official capacity and CLINTON COUNTY,

                 Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                        OF COUNSEL:

LAW OFFICE OF THOMAS MARCELLE     THOMAS MARCELLE, ESQ.
Attorney for Plaintiff
Albany County Attorney's Office
112 State Street, 10th Floor
Albany, NY 12207

TOWNE, RYAN & PARTNERS, P.C.       CLAUDIA A. RYAN, ESQ.
Attorneys for Defendants                  JOHN F. MOORE, ESQ.
450 New Karner Road
P.O. Box 15072
Albany, NY 12205

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION & ORDER

## I. INTRODUCTION

    Plaintiff Susan R. Castine ("plaintiff" or "Castine") brings this action against

defendants Michael E. Zurlo, Clinton County Administrator, in his individual and official

capacity ("Zurlo"), and Clinton County (collectively "defendants") asserting First

Amendment retaliation and a violation of the Due Process Clause.[1]  Plaintiff also seeks a declaration that Local Law No. 1 is unconstitutional.

Defendants have moved for summary judgment dismissing the entire complaint. Plaintiff opposes and has cross-moved for summary judgment on liability.  Defendants oppose.  Oral argument was heard on Friday, April 27, 2012 in Utica, New York.  Decision was reserved.

## II.  BACKGROUND

Unless otherwise noted, the following facts are undisputed.  Castine was elected to a four-year term as Town Justice for Beekmantown, New York, within defendant Clinton County.  That term ran January 1, 2007, to December 31, 2010.  In September 2008 while holding the position of Town Justice, Castine was nominated by the Clinton County Democratic Party for the position of Democratic Election Commissioner.  That nomination was to fill a vacancy in a two-year term running from January 1, 2009 to December 31, 2010.  In October 2008, the Clinton County Legislature (the "Legislature") appointed her to the position of Election Commissioner.

On July 12, 2010, while holding the positions of Election Commissioner and Town Justice, Castine filed her Democratic candidacy petition for re-election as Town Justice (for the November 2, 2010 election).  Her bid for re-election was challenged by Terry Sears, the nephew of Republican Legislator E. Thomas Sears ("Legislator Sears").  At this time, defendant Zurlo became aware that plaintiff had filed her petition for re-election.

---

[1]  Plaintiff withdrew her fourth cause of action alleging a violation of the Contracts Clause.

On July 14, 2010, the Legislature held an executive session during which Zurlo

asked for direction as to whether to enforce Local Law No. 1 against Castine.  At this

time, the Legislature was comprised of seven Republican members (including Legislator

Sears), and three Democratic members.  Local Law No. 1 states, in pertinent part:

> Any person who shall become a candidate for elective public
> office shall be disqualified during the period of his or her
> candidacy from appointment or continued employment from the
> Board of Elections.  The period of his or her candidacy shall be
> deemed to commence with the filing with the Board of Elections of
> a nominating or designating petition in furtherance of his or her
> candidacy unless he or she shall promptly file with the Board a
> written declination of candidacy.

During the executive session, the Clinton County Attorney advised that Local Law. No. 1

was valid and enforceable.  The Legislature unanimously directed Zurlo to enforce Local

Law No. 1 as it pertained to Castine.

On July 15, 2010, Zurlo hand delivered a letter to Castine informing her that

pursuant to Local Law No. 1, she would be terminated from her position as Election

Commissioner effective July 16 due to her candidacy for Town Justice.  The letter

advised that she could remain Election Commissioner if she declined candidacy for Town

Justice.  Castine expressed her disagreement with Zurlo's interpretation of the law and

contacted the New York Board of Elections that day to inquire about the validity of Zurlo's

actions.  She submitted a copy of Zurlo's letter to Attorney Paul Collins of the Board of

Elections, who advised her to refuse to leave her office and to file her petition of

acceptance for candidacy for Town Justice.

The following day, July 16, Zurlo e-mailed Castine stating, "I just wanted to confirm

that you will be sending me a copy of proof of declination today," to which she replied "I

will be responding today."  In the days that followed, plaintiff had at least two conversations with Clinton County Personnel Director Alan Gibson ("Gibson") in which he told her he wanted her to vacate her office if she did not decline her candidacy for Town Justice.  Castine told Gibson he did not have the authority to remove her and advised that she would only leave her office with a deputy present.

On July 19, Gibson went to plaintiff's office with a deputy, explained why he was there, and asked her to complete a County Termination Checklist.  Castine refused to sign the checklist.  She was then escorted from the building by Gibson and the deputy. That same day, Castine, Clinton County Democratic Party, and Martin Mannix,[2] commenced this lawsuit.  The following day, July 20, those plaintiffs filed an order to show cause ("OTSC") for a temporary restraining order ("TRO") and preliminary injunction enjoining defendants from enforcing Local Law No. 1 and enjoining them from otherwise preventing Castine from performing her duties as Election Commissioner.  The TRO was issued that day, and a show cause hearing was conducted on July 29.  ECF No. 5.  Decision was reserved and the TRO was extended until August 12.

The TRO was vacated in a written decision issued August 11, 2010.  Castine v. Zurlo, 733 F. Supp. 2d 338 (N.D.N.Y. 2010).  Castine's motion for a preliminary injunction was denied and Clinton County Democratic Party and Mannix's motion for a preliminary injunction was granted.  Id.  As a result of granting the preliminary injunction with regard to Clinton County Democratic Party and Mannix, the defendants were preliminarily enjoined from enforcing Local Law No. 1 and enjoined from all action or threat of action that prevented

---

[2]  Clinton County Democratic Party and Martin Mannix ("Mannix") voluntarily dismissed all claims in October 2011.  Only the first, third, and fifth causes of action remain.

or inhibited Castine from performing her duties as Election Commissioner.  Both parties

appealed.

The primary elections were held on September 14, 2010.  Terry Sears and Castine

split the primary for Beekmantown Town Justice.[3]  The same day, the Second Circuit

disposed of both appeals and vacated the preliminary injunction concluding that there was no

irreparable harm to Clinton County Democratic Party and Mannix.  The Second Circuit

explained:

> The service of the Deputy Commissioner (chosen by the Democratic
> Election Commissioner-herself chosen by the Clinton County
> Democratic Party in accordance with state law) in lieu of the
> Commissioner on the Clinton County Board of Elections ensures that
> there is no irreparable harm to the Clinton County Democratic Party.

Second Circuit Mandate, ECF No. 10.

Also on September 14, plaintiffs filed an OTSC for an expedited motion for summary

judgment on the first (First Amendment retaliation) and fifth (declaration that Local Law No. 1

is unconstitutional) causes of action.  The request for an OTSC was denied by oral order that

same day, and the parties were directed to brief plaintiffs' summary judgment motion on a

regular motion schedule.  Later that day, plaintiffs moved for reconsideration of the denial of

the OTSC, and defendants opposed.

Defendants later opposed plaintiffs' motion for summary judgment and cross-moved for

summary judgment on the first and fifth causes of action.  Plaintiffs' request for

reconsideration of the denied OTSC and both parties' summary judgment motions were

scheduled to be heard on October 22, 2010.

---

[3]  Sears won the Independent party primary while Castine won the Conservative party primary.

Meanwhile, in Castine's absence, Deputy Election Commissioner Randa Buompensiero-Filion assumed the role of Election Commissioner. On October 12, 2010, she emailed Zurlo to request that Castine be allowed to volunteer at the Board of Elections. On October 14, Zurlo responded that Castine would not be permitted to volunteer. That same day, Castine moved for a TRO enjoining defendants from enforcing Local Law No. 1 and ordering them to cease and desist from preventing her from volunteering at the Board of Elections. The request for a TRO was denied on October 18. Castine v. Zurlo, No. 8:10–CV–879, 2010 WL 4103039, at *3 (N.D.N.Y. Oct. 18, 2010).

Oral argument proceeded as scheduled on October 22, 2010. An order was issued from the bench denying both parties' motions for summary judgment because discovery had not yet been conducted and there were disputed issues of material fact. ECF. No. 31. Plaintiffs' motion for reconsideration of the denial of the OTSC was denied as moot. Id.

On November 2, 2010, Castine won the election for Beekmantown Town Justice. On November 3, one day after the election concluded and prior to the certification of the election results, she returned to her position as Election Commissioner.

## III.  DISCUSSION

Defendants move for summary judgment dismissing the first cause of action alleging First Amendment retaliation on the basis that plaintiff has no evidence to support a prima facie case. They also contend there is no evidence of any malice or reckless disregard of plaintiff's rights to warrant a punitive damages award. They assert plaintiff's third cause of action alleging a procedural due process violation should be dismissed because Castine has no protected property interest in the position of Election Commissioner. They also move to dismiss the fifth cause of action seeking a declaration that Local Law No. 1 is

unconstitutional on the basis that the law is valid and enforceable.  Finally, defendant Zurlo

contends he is entitled to qualified immunity on all claims against him.  Plaintiff opposes and

cross-moves for summary judgment on liability in her favor.

### A.  Summary Judgment Standard

Summary judgment is warranted when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits . . . show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106

S. Ct. 2548, 2552 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct.

2505, 2509–10 (1986).  All facts, inferences, and ambiguities must be viewed in a light most

favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475

U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986).

Initially, the burden is on the moving party to demonstrate the absence of a genuine

issue of material fact.  Fed. R. Civ. P. 56; Liberty Lobby, Inc., 477 U.S. at 250, 106 S. Ct. at

2511.  A fact is "material" if it "might affect the outcome of the suit under the governing law."

Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; see also Jeffreys v. City of N.Y., 426 F.3d

549, 553 (2d Cir. 2005).  The non-moving party "must do more than simply show that there is

some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at

586, 106 S. Ct. at 1356.  There must be sufficient evidence upon which a reasonable fact

finder could return a verdict for the non-moving party.  Liberty Lobby, Inc., 477 U.S. at

248–49, 106 S. Ct. at 2510; Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. at 1356.

### B. First Amendment Retaliation

Defendants argue Castine's first cause of action alleging First Amendment retaliation must be dismissed because she cannot establish a causal connection between her speech and the adverse employment action. They also contend her speech was disruptive.

A public employee who makes a First Amendment claim of retaliation must show that: (1) she engaged in protected speech; (2) she suffered an adverse employment action; and (3) there is a causal connection between her speech and that adverse employment action, so that it can be said that the plaintiff's speech was a motivating factor in the adverse employment action. See Garcetti v. Ceballos, 547 U.S. 410, 418, 126 S. Ct. 1951, 1958 (2006). Public employee speech is protected only when the public employee speaks as a private citizen, and not as an employee. Nagle v. Marron, 663 F.3d 100, 105 (2d Cir. 2011). A causal connection can be established by "showing that the protected activity was closely followed in time by the adverse employment action." Id. at 110 (internal quotations omitted). Despite a plaintiff establishing a prima facie case of retaliation, "[a]n employer can avoid liability for retaliation if it shows that it reasonably predicted that the plaintiff's speech would be disruptive, the disruptive potential outweighed the value of the speech, and the adverse employment action was taken not in retaliation but to prevent disruption." Id. at 113, n.11 (citing Anemone v. Metro. Transp. Auth., 629 F.3d 97, 115 (2d Cir. 2011)).

It is undisputed that Castine engaged in protected speech when she filed her petition of candidacy for re-election as Beekmantown Town Justice, and that she suffered an adverse employment action when she was removed from her position as Election Commissioner. Although there is no bright line defining the maximum time period that can give rise to an inference of causation, the temporal proximity between Castine's filing of her candidacy

petition on July 12 and Zurlo's notification to her on July 14 that she would be terminated from the position of Election Commissioner certainly suffices. Id. at 111 (noting that six weeks between protected speech and adverse employment action fits comfortably within any line the Second Circuit might draw).

Defendants rebut the inference of causation by insisting that Local Law No. 1 was enforced not to retaliate against Castine because she exercised her First Amendment right to run for office, but instead for the same legitimate reason that the law was enacted in 2000: to prevent a candidate for public office in Clinton County from holding a position as an employee of the Board of Elections. Here, holding the office of Election Commissioner could potentially allow a candidate for public office in Clinton County to influence the outcome of his or her own election. James Langley, Jr., Chairman of the Legislature ("Chairman Longley"), and a member of the Legislature in 2000 when Local Law No. 1 was passed, testified as to the motivation behind passing the law:

> Up until shortly before 1999, one of the County's Election Commissioners also held the position of Town Justice for the Town of Plattsburgh. He retired prior to the passing of Local Law #1 in the year 2000. During 1999, after that Election Commissioner had retired, there was concern expressed by members of the County Operations Committee and Legislature members regarding a County Election Commissioner holding that post when he or she was a candidate for any public office, including Town Justice. At the time of these discussions, there were rumors that County Election Commissioners for both parties were considering running for Town Justice. It was the Legislature's view that holding the position of Election Commissioner while running for public office was a conflict of interest. Election Commissioners have powers that can doubtless influence the outcome of elections within the County, including determining the validity of petitions, determine those voters entitled to vote by absentee ballot, count, tally and canvas votes for the primary and general elections, approve the form of the ballot for the primary and general elections, to name a few. For example, County boards of election are statutorily empowered to review applications to cast absentee ballots, and obviously the candidate for any public office could effect the outcome of his or her election by rejecting (or not rejecting) an application for an absentee ballot.

Langley Aff., July 23, 2010, ¶ 3.  He testified that the law was not intended to prevent employees of the Board of Elections from holding the position of Town Justice, rather, "Local Law #1 was intended to prevent candidates for <u>any</u> public office from acting as Election Commissioner or otherwise by employed by the Board of Elections <u>during their candidacy</u>."  <u>Id</u>. ¶ 5.

Plaintiff however asserts that Local Law No. 1 was enforced against her due to an improper and retaliatory motive—because her run for re-election was challenged by Legislator Sears's nephew, and Legislator Sears was upset she had the audacity to challenge his nephew.  The complaint also asserts Legislator Sears informed voters that Castine was unqualified to run and assured that Castine would be prevented from running or she would lose her job as Election Commissioner.  These allegations are only partially supported now that discovery is complete.

Castine testified that Beekmantown residents Donald and Pauline Stone advised her that Legislator Sears arrived at their door seeking signatures for Terry Sears's candidacy petition for Town Justice.  According to plaintiff, Pauline Stone asked Legislator Sears if plaintiff was also running, to which Legislator Seras replied no plaintiff could not run and advised the Stones that Castine was making $40,000 in her job as Election Commissioner and $15,000 as Town Justice, and it wouldn't make sense for her to run for Town Justice because she would have to quit the Election Commissioner position.  Plaintiff admits that Legislator Sears never commented on her actual qualifications to serve as Town Justice.

Legislator Sears testified that in July 2010, he and his wife accompanied their nephew Terry Sears while he circulated designating petitions for his planned candidacy for Town Justice.  Legislator Sears contends that Pauline Stone inquired whether Castine was

planning on running for Town Justice.  He informed her that it was his understanding that
Local Law No. 1 precluded an Election Commissioner from also being a candidate for
elected office.  He then advised Pauline Stone, pursuant to his understanding of the law, that
plaintiff would be required to leave her position as Election Commissioner in order to run for
Town Justice and be in compliance with Local Law No. 1.  He also contends he was not
"upset that Ms. Castine had the audacity to challenge" his nephew, as Castine claims.

Defendant Zurlo testified that the Legislature unanimously supported the enforcement
of Local Law No. 1, and no member, including Legislator Sears, expressed that they wished
to enforce the law because Castine was a Democrat or because Terry Sears was running
against her for Town Justice.  Nor does Personnel Director Gibson's testimony indicate any
other motivation for enforcing Local Law No. 1.  He was advised that Clinton County had
chosen to enforce Local Law No. 1 and remove plaintiff as Election Commissioner.
Chairman Longley testified that the only reason Local Law No. 1 was enforced was because
Castine, as Election Commissioner, was running for public office and was therefore in
violation of the law during her period of candidacy.  Legislator Sears also testified that this
was the case.

There is no admissible evidence that the defendants, in removing plaintiff from the
position of Election Commissioner during the period of her candidacy for Town Justice, were
motivated by plaintiff's protected speech.  She has not provided proof of any comments or
acts by Zurlo or any other Clinton County employee to support the contention that Local Law
No. 1 was enforced to retaliate against her for running for re-election for Town Justice.  No
reasonable jury could find a causal connection between plaintiff's speech and that adverse

employment action so that it could be said that plaintiff's speech was a motivating factor in the adverse employment action.  Therefore plaintiff's first cause of action will be dismissed.

### C.  Procedural Due Process

Defendants contend Castine's third cause of action alleging she was deprived of pay, health insurance, and other benefits without due process when she was removed as Election Commissioner must be dismissed because she does not have a protected property interest in the position of Election Commissioner.  Plaintiff did not respond to this argument.

The Due Process Clause of the Fourteenth Amendment contains both a procedural and substantive component.  Zinernon v. Burch, 494 U.S. 113, 125, 110 S. Ct. 975, 983 (1990). The procedural component bars "the deprivation by state action of a constitutionally protected interest in life, liberty, or property . . .  without due process of law."  Id. (internal quotation omitted).  A procedural due process inquiry entails two issues:  (1) "whether there exists a . . . property interest of which a person has been deprived," and if so, (2) "whether the procedures followed by the State were constitutionally sufficient."  Oneida Indian Nation of N.Y. v. Madison Cnty., 665 F.3d 408, 428 (2d Cir. 2011) (internal quotations omitted). "Property interests are not created by the Constitution, but are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  Id. (internal quotations omitted).  "In order to have an interest protectable under the Constitution, a person must have a 'legitimate claim of entitlement to it.'" Abramson v. Pataki, 278 F.3d 93, 99 (2d Cir. 2002) (quoting Bd. of Regents of State Coll. v. Roth, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972)).  In the employment context, the interest is typically established by showing that under the provisions of a statute or collective

bargaining agreement, the employee cannot be terminated or demoted without a hearing. Ciambriello v. Cnty. of Nassau, 292 F.3d 307, 313–14 (2d Cir. 2002).

In order to have had a property interest in her position as Election Commissioner, Castine must have had a legitimate claim of entitlement to it. Once appointed, an Election Commissioner has a property interest in her position. The New York Constitution guarantees an Election Commissioner the right to a hearing before her position is taken away, absent conviction of a crime. See N.Y. Const. Art. XIII, § 13 (before the governor may remove any elected sheriff, he must give to such officer a copy of the charges against him or her and an opportunity of being heard in his or her defense); N.Y. Elec. Law § 3–200(7) ("An election commissioner may be removed from office by the governor for cause in the same manner as a sheriff."). Further, state law specifically permits plaintiff to run for Town Justice while concurrently serving as Election Commissioner. N.Y. Elec. Law § 3–200(4), (6). However, as discussed in detail below, Local Law No. 1 supersedes those portions of the Election Law permitting Castine to serve in both capacities. Local Law No. 1 specifically forbids Castine from holding the Election Commissioner position while running for Town Justice. Because Castine had no legitimate claim of entitlement to her position as Election Commission while she was also a candidate for Town Justice, her procedural due process claim will be dismissed.

**D.  Validity of Local Law No. 1**

Defendants assert Castine's fifth cause of action seeking a declaration that Local Law No. 1 violates the New York Constitution and New York Municipal Home Rule Law and expressly conflicts with New York Election Law must be dismissed.

At the heart of this lawsuit is whether the Clinton County Legislature had the authority to enact Local Law No. 1 and whether this county law overrides conflicting state law.  According to plaintiff, Local Law No. 1 prohibits an act—running for Town Justice while being Election Commissioner—which has been specifically permitted by New York law.  Thus, she concludes Local Law No. 1 expressly conflicts with state law and is impermissibly consistent.

Section 3–200 of the Election Law entitled "Boards of elections; creation, qualifications of commissioners, removal" states:

> 4.  No person shall be appointed as election commissioner or continue to hold office who is not a registered voter in the county and not an enrolled member of the party recommending his appointment, or who holds any other public office, except that of commissioner of deeds, notary public, village officer, city or town justice, member of a community board within the city of New York or trustee or officer of a school district outside of a city.
>
> . . .
>
> 6.  An election commissioner shall not be a candidate for any elective office which he would not be entitled to hold under the provisions of this article, unless he has ceased by resignation or otherwise, to be commissioner prior to his nomination or designation therefor. Otherwise such nomination or designation shall be null and void.
>
> 7.  An election commissioner may be removed from office by the governor for cause in the same manner as a sheriff. Any vacancy so resulting shall be filled in a manner prescribed by this article for filling vacancies.

N.Y. Elec. Law § 3–200(4), (6), (7).  When read together, subdivisions (4) and (6) permit an Election Commissioner to run for Town Justice, while subdivision (7) provides that the means for removal of an Election Commissioner from office is by the governor for cause.  Local Law No. 1 states in relevant part:  "Any person who shall become a candidate for elective public office shall be disqualified during the period of his or her candidacy from appointment or continued employment from the Board of Elections."  Thus, Local Law No.

1 expressly conflicts with Election Law section 3–200(4) and (6).  Plaintiff also contends that Local Law No. 1 snatches the power of removal of an Election Commissioner from the governor where it rests, and grants it to defendants in violation of Election Law section 3–200(7).

Article IX of the New York Constitution permits counties to enact local laws that are "not inconsistent with the provisions of this constitution or any general law."  N.Y. Const. Art. IX, § 2(c).  New York Municipal Home Rule Law provides that local governments may adopt local laws not inconsistent with the provisions of the New York Constitution or any general law relating to its property, affairs or government.  N.Y. Mun. Home Rule Law § 10(1)(I).  Plaintiff contends that pursuant to these provisions, the Clinton County Legislature had no authority to enact Local Law No. 1 because it conflicts with New York Election Law.

However, section 1–102 of the Election Law provides that "[w]here a specific provision of law exists in any other law which is inconsistent with the provisions of this chapter, such provision shall apply unless a provision of this chapter specifies that such provision of this chapter shall apply notwithstanding any other provision of law."  The plain reading of section 1–102 permits localities to enact local laws which conflict with the Election Law, unless the provision of the Election Law with which it conflicts expressly provides that its provision "shall apply notwithstanding any other provision of law."  Election Law section  3–200 does not contain any language indicating that its provisions shall apply notwithstanding any other provision of law.  Thus, Local Law No. 1 trumps Election Law section 3–200.

Plaintiff urges that a literal interpretation of section 1–102 would produce absurd results not intended by the State Legislature.  It is true that under this interpretation, much of New York's Election Law could be rendered a nullity at the discretion of county legislatures.

According to plaintiff, the State Legislature drafted over 1,000 provisions of the Election Law, yet only twelve provisions contain the "notwithstanding any other law" language.  However, it is well-established that when the statutory language is plain, it must be enforced according to its terms.  See, e.g., Lamie v. U.S. Trustee, 540 U.S. 526, 534, 124 S. Ct. 1023, 1030 (2004); Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A., 530 U.S. 1, 6, 120 S. Ct. 1942, 1947 (2000).  New York courts agree and "have long recognized [a plain reading of the statute] as the clearest indication of legislative intent."  N. Syracuse Cent. Sch. Dist. v. N.Y.S. Div. of Human Rights, 19 N.Y.3d 481, 498 (2012); see also Albany Law Sch. v. N.Y.S. Office of Mental Retardation, 19 N.Y.3d 106, 120 (2012) ("In matters of statutory interpretation, our primary consideration is to discern and give effect to the Legislature's intention.  As we have repeatedly stated, the text of a provision is the clearest indicator of legislative intent and courts should construe unambiguous language to give effect to its plain meaning.") (internal citations and quotations omitted).

        Both parties provide case law to support their arguments, but none is binding nor directly on point.  On at least one occasion, New York courts have held that the State Legislature reserved for itself the authority to define the circumstances under which an Election Commissioner may be disqualified from office.  Wood v. Cnty. of Cortland, 23 Misc. 3d 913, 917 (N.Y. Sup. Ct. 2009), aff'd, 72 A.D.3d 1447 (N.Y. App. Div. 3d Dep't 2010). In Wood, the court invalidated a county law disqualifying the petitioner from continuing his service as Election Commissioner because the county law conflicted with New York Public Officers Law section 30.  Id.  By describing the limited circumstances under which a person could be disqualified as Election Commissioner in Public Officers Law section 30, the court determined that the State Legislature withheld this authority from county governments.  Id.

- 16 -

Defendants argue <u>Wood</u> is inapplicable because Election Law section 1–102 was not considered.[4]  They argue that in <u>Wood</u>, there could be no argument whether the county law at issue conflicted with the Election Law and thus whether section 1–102 applied because the issue was whether the county law conflicted with the Public Officers Law.  Plaintiff contends that while section 1–102 was not directly at issue in <u>Wood</u>, the court's reasoning is still persuasive.

Both parties cite <u>County of Broome v. Conte</u>, 120 Misc. 2d 1050 (N.Y. Sup. Ct. 1983), <u>aff'd</u>, 101 A.D.2d 905 (N.Y. App. Div. 3d Dep't 1984), involving what constituted a "vacancy" in public office.  In that case, the defendant Election Commissioner was convicted of a misdemeanor.  <u>Id</u>. at 1051.  Pursuant to New York Public Officers Law section 30(1)(e), his office became vacant upon his conviction.  <u>Id</u>.  However, as noted, Election Law section 3–200(7) provides that "[a]n election commissioner may be removed from office by the governor for cause in the same manner as a sheriff."  The defendant argued the Public Officers Law did not apply because the Election Law supersedes the Public Officers Law. <u>Broome</u>, 120 Misc. 2d at 1052.

The court found that "[t]here is no general legislative mandate indicating that the provisions of the Election Law supersede the provisions of the Public Officers Law."  <u>Id</u>. at 1053.  The court went on to explain that pursuant to Election Law section 1–102, Public Officers Law section 30 applied because Election Law section 3–200 did not contain any "notwithstanding any other provision of law" language.  <u>Broome</u>, 120 Misc. 2d at 1053.

---

[4]  At oral argument, this court made the point, in response to defendants' argument that <u>Wood</u> did not involve the application of Election Law section 1–102, that simply because the State Supreme Court and Appellate Division arguments did not specifically reference section 1–102, that did not mean such arguments were not made to those courts.  To address this concern, defendants obtained the complete appellate record in <u>Wood</u> and submit that section 1–102 was not raised.

Broome supports defendants' position; Election Law 1–102 was applied to supersede a provision of the Election Law.

The defendant Election Commissioner in Broome also argued that "the very existence of the gubernatorial removal power in the Election Law indicates that it is the only means by which an election commissioner can be removed from office." Broome, 120 Misc. 2d at 1054. The court noted that Mr. Broome was not being "removed"; instead the plaintiff county sought to have his office declared vacant. The court went on to explain:

> When removal is not governed by statutory or constitutional provision, the general rule is that the power of removal is incident to the power to appoint. In other words, had the State Legislature not provided for removal by the Governor in the Election Law, an election commissioner could be removed by the local legislative body. This apparently was not the intended result and therefore an express provision for removal was included in the Election Law.

Id. (internal citations omitted).[5] Thus, plaintiff cites Broome for the finding that the State Legislature did not intend for counties to have the authority to remove Election Commissioners.

Defendants distinguish this part of the Broome holding by arguing that the governor is not the exclusive means of removing an Election Commissioner, to which plaintiff agrees. Election Law section 3–200(7) reads: "an Election Commissioner may be removed from office by the Governor for cause in the same manner as a sheriff." (emphasis added). As Judge Kahn noted in Brunell v. Clinton County, "[t]he selection of the word 'may' suggests that removal by the Governor is one of multiple ways that an election commissioner may be

---

[5] The Broome Court went on to conclude that Public Officers Law section 30 and Election Law 3-200(7) could be harmonized because the former covers vacancies while the latter covers removal. Id. at 1053.

removed."[6] No. 8:07-cv864, Decision and Order, ECF No. 28 at 5, aff'd, 334 F. App'x 367 (2d Cir. 2009) (summary order) (affirming dismissal of procedural due process and First Amendment retaliation claims but finding request for declaration that only the governor has the right to remove an Election Commissioner to be moot).  Judge Kahn went on to cite Broome, 120 Misc. 2d 1050, and New York Executive Law section 63 which states that "the Attorney-General may maintain an action, upon his own information or upon the complaint of a private person against the person who . . . unlawfully holds or exercises . . . a public office," N.Y. Exec. Law § 63(b)(1).

Finally, although plaintiff initially urges that any application of section 1–102 is improper, she later argues that defendants' cited examples involve conflicting state laws, and not conflicting local laws.  However, as previously noted in this case, "[n]othing in § 1–102 indicates that the New York Legislature was only speaking in reference to conflicting state laws.  Rather, the statute reads:  'Where a specific provision of law exists in any other law which is inconsistent with the provisions of this chapter . . . .'  Elec. Law § 1–102 (emphasis added)."  Castine, 733 F. Supp. 2d at 344.  Moreover, in an informal opinion, the New York State Attorney General concluded that a village charter provision inconsistent with Election Law section 15–106 controlled because section 15–106 did not contain the "notwithstanding any other provision of law" language.  1980 N.Y. Op. Att'y Gen. (Inf.) 109.

Deference to the plain, unambiguous language of Election Law section 1–102 is appropriate.  It must be presumed that the State Legislature meant what they wrote, and the provision must be applied to permit the Clinton County Legislature to enact local laws, such

----

[6]  Judge Kahn found the case did not present a sufficient "case or controversy" for the court to issue a declaratory judgment because Brunell had not actually been removed from office, but noted that if it did, removal by the governor is not the exclusive means of removing an Election Commissioner.

as Local Law No. 1., which conflict with the Election Law.  Accordingly, Local Law No. 1 is not impermissibly inconsistent with Election Law section 3–200(4) and (6) and does not violate section 2(c) of Article IX of the New York Constitution nor section 10 of the New York Municipal Home Rule Law.  Moreover, the Clinton County Legislature had the power to disqualify Castine as Election Commissioner during the period of her candidacy for Town Justice because Election Law section 3–200(7) is not the sole means for removal of an Election Commissioner.  For these reasons, plaintiff's fifth cause of action will be dismissed.

      E. **Remaining Arguments**

Because defendants' motion for summary judgment will be granted and all claims will be dismissed, there is no need to address defendants' remaining arguments regarding punitive damages and qualified immunity.

## IV.  CONCLUSION

Therefore, it is

ORDERED that

1.  Defendants Michael Zurlo and Clinton County's motion for summary judgment is GRANTED;

2.  Plaintiff Susan R. Castine's cross-motion for summary judgment is DENIED; and

3.  The complaint is DISMISSED in its entirety.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  April 12, 2013
      Utica, New York.